UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | CRIMINAL NO. 04-10088 DPW |
| ) | |
| JOEL GARFIELD FRANCIS ) | |
| ) | |

SENTENCING MEMORANDUM OF JOEL FRANCIS

Joel Francis respectfully submits this Memorandum in support of his request that the Court sentence him to thirteen months' incarceration. In part I below, he argues that two years is the applicable statutory maximum under 8 U.S.C. § 1326, because he was not charged with, nor did he plead guilty to, prior conviction of a felony. In part II, the defendant addresses the reasons why the Court should impose the requested sentence under 18 U.S.C. § 3553 (a).

I. Two years is the applicable statutory maximum under 8 U.S.C. § 1326.

    A. The defendant was not indicted for, nor did he plead guilty to, being deported after having been convicted of a felony.

Mr. Francis was charged with violating 8 U.S.C. § 1326, "Illegal Re-entry of Deported Alien." The indictment alleges that he, "being an alien and having been excluded, deported and removed from the United States..." was found here, "in violation of Title 8, United States Code, Sections 1326(a) and (b) (2) and Title 6, United States Code, Sections 202 (3) and (4) and Section 557." The indictment does not allege his prior conviction of any crime. A copy of the indictment is attached as "A."

On February 3, 2005, the defendant pled guilty before this Court. A transcript of the plea colloquy is attached as "B." At the hearing, the Court listed the elements of the offense to which

Mr. Francis was pleading - he is an alien; he was previously excluded from this country; he reentered without receiving the approval of the government; and he came in intentionally - and asked Mr. Francis if he understood them (Tr. pp. 8-9). He responded affirmatively (Tr. p. 9).[1] In his statement of facts, the prosecutor said that he would have proved that Mr. Francis "pled guilty to a criminal offense in Circuit Court in Baltimore, Maryland" prior to his deportation (Tr. p. 9). When the Court asked Mr. Francis whether he agreed with the facts as stated by the prosecutor, defense counsel responded that he was not "disputing in any way that he was the individual deported in 1991 and that he was found in the United States in March and that he did not have any permission to be here" (Tr. p. 11). The Court then asked a series of questions concerning the facts, including an inquiry as to whether Mr. Francis "knew that the Government had decided because of your prior criminal record" to deport him, to which he responded "yes" (Tr. p. 12).

      B.  <u>This Court should find that the defendant cannot be sentenced under 18 U.S.C. §1326 (b) (2) and should sentence him under subsection (a) to no more than two years.</u>

          1.  <u>The Almendarez-Torres decision</u>.

8 U.S.C. § 1326 (a) states that an alien who is deported and reenters shall be imprisoned not more than two years. Section 1326 (b) (2) raises the statutory maximum to twenty years for an alien "whose removal was subsequent to a conviction for commission of an aggravated felony." The statute does not set out the manner or standard of proof required to support the ten-fold increase in the statutory maximum, although the statute does require findings regarding the class

---

[1] The government stated that the maximum penalty was twenty years (Tr. p. 3). The Court asked Mr. Francis if he understood he was exposing himself to penalties "as high as that," to which he responded "yes." (Tr. pp. 3-4). This exchange did not constitute an admission to the fact of a prior conviction.

2

of the conviction, the timing relative to removal, and the characteristics that make a felony aggravated under 8 U.S.C. § 1101(a) (43).

In *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the defendant, having admitted in his guilty plea colloquy that his deportation "had taken place 'pursuant to' three earlier 'convictions' for aggravated felonies," argued that the Fifth Amendment required the prior felony convictions to be charged in the indictment. *Id*. at 227. The Court, in a five to four decision, held that subsection (b) (2) is

> a penalty provision, which simply authorizes a court to increase the sentence for a recidivist. It does not define a separate crime. Consequently, neither the statute nor the Constitution require the Government to charge the factor that it mentions, an earlier conviction, in the indictment.

*Id*. at 226-227.

In his dissent, Justice Scalia wrote that "the text of the statute supports, if it does not indeed demand, the conclusion that subsection (b) (2) is a separate offense that includes the violation described in subsection (a) but adds the additional element of prior felony conviction." *Id*. at 250. He criticized the majority's ruling that it was constitutionally permissible for "a defendant's sentencing exposure to be increased tenfold on the basis of a fact that is not charged, tried to a jury, and found beyond a reasonable doubt." *Id*. at 260. He questioned why recidivism should be an exception to the rule that a fact which increases maximum permissible punishment must be found by a jury beyond a reasonable doubt: "[T]here is no rational basis for *making* recidivism an exception." *Id.* at 257-258 [emphasis in original]. He concluded that under the doctrine of constitutional avoidance, the Court should have construed section (b) (2) as defining a

separate offense that must be charged and proven. *Id*. at 271.[2]

2. *Almendarez-Torres* is no longer good law.

Cases decided after *Almendarez-Torres* - *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona,* 536 U.S. 584 (2002), *Blakely v. Washington*, 125 S. Ct. 2531 (2004), *United States v. Booker*, 125 S. Ct. 738 (2005), and *Shepard v. United States*, 125 S. Ct. 1254 (2005) - establish that the Sixth Amendment requires factors that increase statutory maximums to be charged and either proved beyond a reasonable doubt to a fact-finder or admitted as part of a guilty plea. Although the Court has continued to mechanically cite the irrational "exception" to this rule carved out by *Almendarez-Torres*, according to which prior convictions are the only facts increasing statutory maximums that do not need to be charged and proved, a majority of the Court believes that *Almendarez-Torres* was wrongly decided. Under the reasoning of these cases, *Almendarez-Torres* is no longer good law. This Court should utilize the doctrine of constitutional doubt to find that the statute under which the defendant is charged sets out a separate crime in subsection (b) (2). Therefore, since the defendant was not charged, and did not plead guilty to, the predicate conviction, he cannot be sentenced under that section.[3]

---

[2]"[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

[3]The Supreme Court stated long ago the "one [rule of] universal application, - that every single ingredient of the offence must be accurately and clearly expressed; or, in other words, that the indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted." *United States v. Reese*, 92 U.S. 214, 232 (1875) (Clifford, J., concurring). This long-standing precedent, solid law before *Almendarez-Torres*, and upheld in case law since *Almendarez-Torres*, indicates that *Almendarez-Torres* is an invalid deviation from the common law and constitutional requirement that all the ingredients necessary for punishment be alleged in an indictment. As the defendant was not indicted for having a specific conviction

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." While affirming the questionable holding of *Almendarez-Torres,* the Court tightly limited that case to its facts, noting that *Almendarez-Torres* "represents at best an exceptional departure from the historic practice [of requiring pleading and proof of factors increasing statutory maximums]." 530 U.S. at 484, 487.  The Court emphasized that no question regarding jury trial or standard of proof arose in *Almendarez-Torres* and explicitly noted that *Almendarez-Torres* may have been incorrectly decided and should be narrowly applied. *Id*. at 488-489.  The Court's lack of confidence in *Almendarez-Torres* was undoubtedly reinforced by the defection of Justice Thomas, who authored a concurring opinion renouncing his swing vote in *Almendarez-Torres*. *Apprendi*, at 520-21 (Thomas, J., concurring).

In *Ring*, the Court addressed the inconsistency between *Apprendi* and *Walton v. Arizona*, 497 U.S. 639 (1990), in which the Court had upheld fact finding by a judge concerning sentencing factors predicate to a death sentence. The Court found that evolving constitutional litigation undermined *Walton*, and overruled that case. The Court specifically quoted Justice Thomas's concurring opinion in *Apprendi*, in which he asserted *Almendarez-Torres* was wrongly decided:

> [I]f the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact [,] ... the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravating crime.

---

under 8 U.S.C. § 1326 (b) (2), he cannot now be punished for it.

*Ring,* 536 U.S. at 605 (quoting *Apprendi*, 530 U.S. at 501 (Thomas, J., concurring)). In reversing *Walton*, the Court stated: "Because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' *Apprendi*, 530 U.S. at 494 n.19..., the Sixth Amendment requires that they be found by a jury." *Ring*, 536 U.S. at 609.

In *Blakely* and *Booker*, the Court held that increases in mandatory guidelines punishment implicated Sixth Amendment rights, but nevertheless quoted *Apprendi* in excluding "the fact of a prior conviction" from its holding that any fact increasing the penalty for a crime beyond the prescribed statutory maximum must be found by a jury beyond a reasonable doubt or admitted to at a guilty plea. *Blakely*, 124 S. Ct. 2536; *Booker*, 125 S. Ct. at 747. By the time of the *Shepard* decision, however, five months after *Booker*, Justice Thomas openly questioned why the Court adhered to the rule of *Almendarez-Torres*, "which draws an exception to the *Apprendi* line of cases for judicial fact finding that concerns a defendant's prior convictions." *Shepard*, 125 S. Ct. at 1264. Concurring, Justice Thomas stated that *Almendarez-Torres*

> has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided [citation omitted]. The parties do not request it here, but in an appropriate case, this Court should consider *Almendarez-Torres*' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of *Almendarez-Torres*, despite the fundamental "imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements."

*Id.* at 1264, quoting *Harris v. United States*, 536 U.S. 545, 581-582 (2002) (Thomas, J., dissenting).

In short, *Almendarez-Torres* is no longer good law. This Court should find that under the doctrine of constitutional doubt, 8 U.S.C. § 1326 (2) (b) sets out a separate crime that was neither

charged nor admitted to by the defendant. Therefore Mr. Francis can only be sentenced, under subsection (a), to a maximum of two years.

    3.  <u>Even if Almendarez-Torres survives, it does not apply to this case</u>.

The Court in <u>Almendarez-Torres</u> addressed only the indictment clause of the Fifth Amendment. The defendant admitted during the plea colloquy that his deportation "had taken place 'pursuant to' three earlier 'convictions' for aggravated felonies." *Almendarez-Torres*, 523 U.S. at 227. The Court there expressly disavowed any holding regarding the manner and standard of proof required to establish the prior aggravated felony. <u>Id</u>. at 248. Here, Mr. Francis did not plead guilty to having the predicate conviction under subsection (2) (b). Accordingly, even assuming the continuing vitality of *Almendarez-Torres* as a statement of Fifth Amendment law, sentencing him to more than two years violates his Sixth Amendment rights under *Apprendi*, *Blakely*, and *Booker*.

Moreover, the current version of 8 U.S.C. § 1326 differs from that addressed in *Almendarez-Torres*. The statute at issue in *Almendarez-Torres* was simpler: former section 1326 included no reference to removal and created two simple categories of aliens "whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony)" and "whose deportation was subsequent to a conviction for commission of an aggravated felony." 8 U.S.C. § 1326(b)(1) and (2) (1988). In addition, the definition of "aggravated felony" under 8 U.S.C. § 1101(a)(43) was less complex than at the time of the *Almendarez-Torres* decision. In 1988, the initial definition included only murder, drug trafficking, and weapons trafficking. Pub. L. No. 100-690, § 7342, 102 Stat. 4469, 4469-70. In 1990, the definition expanded to include crimes of violence for which a term of at least five years imprisonment was imposed.

Immigration Act of 1990, Pub. L. No. 101-649, § 501, 104 Stat. 4978, 5048. In 1996, after Mr. Almendarez-Torres's guilty plea, the definition was expanded to cover dozens of potential offenses depending on various characteristics of the offense. 8 U.S.C. § 1101(a) (43) (2000). [4]

To increase the statutory maximum, 8 U.S.C. § 1326 now requires findings regarding the class of the conviction, the timing relative to removal, and the characteristics that make a felony aggravated under 8 U.S.C. § 1101 (a) (43). However, the statute does not explicitly set out the manner or standard of proof for the increase in the statutory maximum. Compliance with the mandate of *Apprendi* and its progeny require that those facts - facts beyond the mere fact of prior conviction - be proved beyond a reasonable doubt or admitted by the defendant. That has not been done here.

In sum, *Almendarez-Torres* does not apply here because unlike that case, Mr. Francis did not admit as part of his plea that he had the necessary conviction to raise the statutory maximum to twenty years. Under the present statute, the proof concerning the prior conviction is complex and the Court cannot assume the facts necessary to that finding. Not having waived his Sixth Amendment rights to proof of the conviction, Mr. Francis cannot now be punished under the twenty year maximum.

II. <u>18 U.S.C. § 3553 (a) considerations</u>.

---

[4] Some of the offenses involve factors that would not be included in either a judgment or charging documents, such as the amount of loss (8 U.S.C. § 1101(a)(43)(D) and (M)), the purpose of assisting a family member (8 U.S.C. § 1101 (a)(43)(N) and (P)), and factors classifying crimes as "crimes of violence" and drug trafficking crimes. See James P. Fleissner and James S. Shapiro, Sentencing Illegal Aliens Convicted of Reentry After Deportation: A Proposal for Simplified and Principled Sentencing, 8 SENT. RPTR. 243 (March/April 1996) (the tortuous amendment process has increased the complexity of determining what is an "aggravated felony").

The Court should consider factors under 18 U.S.C. § 3553 (a) and impose a sentence which is "sufficient but not greater than necessary" to achieve the purposes of sentencing as set out in the statute. *Booker*, 125 S. Ct. at 757.

      A.  <u>Nature of the offense  (§ 3553 (a) (1))</u>.

Mr. Francis's criminal conduct was non-violent.

      B.  <u>History and characteristics of Mr. Francis<br>(18 U.S.C. §§ 3553 (a) (1) and 3661)</u>

Mr. Francis is a 38 year old Jamaican. He was arrested in Suffolk Superior Court on March 11, 2004 by agents from the Immigration and Naturalization Service, was indicted for illegal reentry on March 31, 2004, and has been held in custody by the U.S. Marshal Service since April 7, 2004, at the Plymouth County Correctional Facility. The day he was arrested by INS, he was in Suffolk Superior Court in connection with a case in which he was charged with trafficking in cocaine. He had made bail in that case and had made every court appearance as required. That case is presently pending and a default warrant is lodged against Mr. Francis; when he finishes whatever sentence the Court gives him here, he will have to appear in Suffolk Superior Court to answer that case.

At the time of his arrest in Suffolk Superior Court in March, 2004, the defendant was living with his girlfriend, Marlene Castillo, with whom he had lived since 1998. They have a daughter, age 6. Mr. Francis has an extremely close relationship with his daughter: he lived with her and financially supported her since her birth. Ms. Castillo, a nurse, is extremely supportive of Mr. Francis and intends to maintain contact with him when returns to Jamaica. She immigrated to the United States from Jamaica herself as a child, and is a legal permanent resident of the United

States.  She confirms that Mr. Francis is a supportive and loving father to his daughter, and she wants her daughter to maintain a close relationship with Mr. Francis when he resides in Jamaica: she intends to allow her daughter to spend summers and vacations with her father there.  Ms. Castillo has told counsel that she is very familiar with Mr. Francis's family in Jamaica and believes that he will have a satisfying and comfortable life there, as his family is financially comfortable and is close-knit.

        C.   <u>The need "to protect the public from further crimes of the defendant" (§ 3553 (a) (2) (C).</u>

When Mr. Francis finishes whatever sentence this Court gives him, he will be taken in custody to answer the open case in Suffolk Superior Court.  With an INS detainer holding him, he will not be released from that case until he is deported.  After he is deported, Mr. Francis will not need to return to the United States either for financial or family reasons.

When Mr. Francis returns to Jamaica, he will have no trouble securing employment, and his family ties there are extensive.  His father owns two restaurants and a manufacturing company in Jamaica, and employs many members of Mr. Francis's family in "the family business."  Counsel spoke to the defendant's father on the telephone from Jamaica when he called to express his support and ask if there was anything he could do to assist counsel in getting his son home.  He readily confirmed that Mr. Francis is on good terms with his family and has a job waiting for him.  Counsel also received telephone calls from the defendant's mother and two of his sisters in Jamaica, and from the defendant's brother, Paul Francis, who lives in New York.  Every one of these family members speaks of the defendant with great affection.  The letters that family members have sent, attached to the Presentence Report (additional copies are attached to this

memorandum as "C"), attest to the defendant's reputation as a dependable, well-loved member of the family. His niece, Alecia Henry, who is blind, describes how the defendant helped to pay for an operation on her eyes and paid for a special "type and speak" computer for her to use in school.

> D. <u>The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (§ 3553 (a) (2) (A))</u>.

The requested sentence satisfies the above concerns. Mr. Francis has been incarcerated since March, 2004 and has been held at the Plymouth County Correctional Facility in Plymouth, Massachusetts since April, 2004. It is well-known that federal inmates at Plymouth serve "hard time" there: the inmates do not go outside for recreation; there are no contact visits with family; visits are of extremely limited duration; there are no educational opportunities; federal inmates may not work; there are no drug programs; and the medical unit is notoriously bad. In addition, because of his status as an illegal alien, any additional time Mr. Francis must serve will be longer and more difficult than if he were a citizen: as an illegal alien he will be housed in a higher security facility than he might otherwise be and he will not be eligible for a half-way house program at the end of his sentence. Finally, after serving his sentence and resolving the case in Suffolk Superior Court, he will undoubtedly spend additional months in INS custody awaiting deportation.

Perhaps the strongest argument for leniency here is that because of the arbitrary policies of the U.S. Marshal Service, the defendant has not been permitted to resolve his Suffolk Superior Court case as he should have. There is simply no reason why the Suffolk Sheriff's department could not have taken custody of Mr. Francis for the days necessary to transport him to court and resolve that case during his time at Plymouth. Instead, the defendant must resolve this case and

complete whatever punishment the Court gives him here, and then go back, perhaps years later, to resolve that case.

Finally, the length of Mr. Francis's incarceration is affected by another happenstance, which is that he returned to a district that does not have a so-called fast track alternative. In many districts, a defendant facing an illegal reentry prosecution may plead to lesser charges that cap the defendant's jail term. The District of Arizona, the Central District of California and the Western District of Washington all have fast track programs, for instance, that provide for a defendant with a prior aggravated felony to have his prison term capped at either 24 or 30 months[5]. Because the District of Massachusetts does not have such a program, these sentence reductions were not available to Mr. Francis.

III. Conclusion

For the reasons set out in Part I, above, Mr. Francis asks this Court to find that the maximum sentence he can receive is two years. For the reasons set out in Part II, he asks the Court to sentence him to thirteen months.

JOEL FRANCIS
By his attorney,
/s/ Page Kelley
Page Kelley
  B.B.O. #548237
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Tel: 617-223-8061

Date: April 21, 2005

---

[5]Counsel's information about fast track programs comes from the sharing of information among Federal Defender Offices: it is based on the reports of the Federal Defender Offices in the mentioned judicial districts.