# Attachment A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**04 CR 1 0 0 8 8 DPW**

UNITED STATES OF AMERICA )
) CRIMINAL NO.
v. )
) VIOLATION:
JOEL GARFIELD FRANCIS, ) 8 U.S.C. § 1326
a/k/a PAUL JOSEPH FRANCIS, ) Illegal Re-entry of
a/k/a KIRK MCMASTERS ) Deported Alien
)

## INDICTMENT

<u>COUNT ONE</u>: 8 U.S.C. §1326 - Illegal Re-entry of Deported Alien

The Grand Jury charges that:

On or about March 11, 2004, at Boston, in the District of

Massachusetts,

JOEL GARFIELD FRANCIS,
a/k/a PAUL JOSEPH FRANCIS,
a/k/a KIRK MCMASTERS,

defendant herein, being an alien and having been excluded,

deported and removed from the United States, attempted to enter,

entered, and was found in the United States without having

received the express consent of the United States Attorney

General prior to March 1, 2003, or the express consent of the

Secretary of the Department of Homeland Security since that date,

to reapply for admission to the United States.

All in violation of Title 8, United States Code, Sections

1326(a) and (b)(2) and Title 6, United States Code, Sections

202(3) and (4) and Section 557.

1



A TRUE BILL

_____
FOREPERSON OF GRAND JURY

_____
William H. Connolly
Assistant U.S. Attorney


DISTRICT OF MASSACHUSETTS, Boston, March 31, 2004.

4:03 pm

Returned into the District Court by the Grand Jurors and
filed.


_____
Deputy Clerk


2

# Attachment B

1               UNITED STATES DISTRICT COURT

2               DISTRICT OF MASSACHUSETTS

3   * * * * * * * * * * * * * * * *
                               *

4   UNITED STATES          *
            Plaintiff     *

5                    *
      VERSUS           *   CR-04-10088-DPW

6                    *

7   JOEL GARFIELD FRANCIS   *
     aka PAUL JOSEPH FRANCIS   *
     aka KIRK McMASTERS     *

8           Defendant    *
                    *

9   * * * * * * * * * * * * * * * *

10       BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

11       UNITED STATES DISTRICT COURT JUDGE

12              RULE 11 HEARING

13            FEBRUARY 3, 2005

14   APPEARANCES:

15      WILLIAM H. CONNOLLY, ESQ., Assistant United
      States Attorney, United States Attorney's Office,

16      1 Courthouse Way, Suite 9200, Boston, Massachusetts
      02210, on behalf of the United States

17

18      PAGE KELLY, ESQ., Federal Defender's Office,
      408 Atlantic Avenue, Boston, Massachusetts 02210,
      on behalf of the Defendant

19

20                   Courtroom No.  1 - 3rd Floor
                   1 Courthouse Way
                   Boston, Massachusetts 02210

21                   11:05 A.M. - 11:20 A.M.

22       Pamela R. Owens - Official Court Reporter
       John Joseph Moakley District Courthouse

23         1 Courthouse Way - Suite 3200
          Boston, Massachusetts  02210

24

25      Method of Reporting:  Computer-Aided Transcription

2

```
 1                    CR-04-10088-DPW

 2                   FEBRUARY 3, 2005

 3          THE COURT:  Well, as I understand it, we're

 4     here for a change of plea.  But is there a plea

 5     agreement?

 6              MS. KELLEY:  There is no plea agreement, Your

 7     Honor.

 8              THE COURT:  Well, then I'll ask Ms. Rynne to

 9     swear Mr. Francis and ask him some questions.

10

11           JOEL GARFIELD FRANCIS, SWORN

12                   EXAMINATION

13     BY THE COURT:

14     Q    Mr. Francis, the purpose of this hearing -- you may

15     remain seated.

16     A    Thank you, Your Honor.

17     Q    The purpose of this hearing is to satisfy me that

18     what appears to be your intention to plead guilty to a

19     serious felony charge here --

20     A    Yes, sir.

21     Q    -- is a knowing and a voluntary act on your part.

22     And in order for me to make that determination, I have

23     to ask you some questions, some of which are personal in

24     nature --

25     A    Yes, sir.
```

3

1    Q    -- to determine whether or not you know what you're

2    doing and what you're doing is voluntary; do you understand?

3    A    Yes, Your Honor.

4    Q    Now, I started this hearing by asking Ms. Kelley if

5    there was some plea agreement between you and the

6    Government.  Is there any plea agreement between you and

7    the Government?

8    A    No, Your Honor.

9    Q    Did anybody threaten you in any way to get you to

10   plead guilty?

11   A    No, Your Honor.

12   Q    Did anybody promise you something in order to get

13   you to plead guilty?

14   A    No, Your Honor.

15   Q    You understand that you're pleading guilty to a

16   very serious criminal felony --

17   A    Yes.

18   Q    -- here that carries with it, I anticipate, rather

19   substantial potential penalties.

20   A    Yes.

21   Q    And I'm going to ask the United States Attorney to

22   tell me what the maximum penalties would be in this

23   case.

24            MR. CONNOLLY:  Your Honor, the maximum

25   penalties would be 20 years in prison; three years of

4

1    supervised release; a $250,000 fine; and a $100 special

2    assessment.

3    Q    Now, you see, what you're doing is exposing

4    yourself to penalties as high as that; do you understand

5    that?

6    A    Yes, Your Honor.

7    Q    And have you had an adequate opportunity to discuss

8    with Ms. Kelley the various defenses that you might have

9    to the charges that the Government has put against you

10   here?

11   A    Yes, Your Honor.

12   Q    Are you satisfied you've received from her the

13   kind of legal advice that you need to make your own

14   determination about whether or not to plead guilty?

15   A    Yes, Your Honor.

16   Q    Can you tell me how old a man you are?

17   A    I am 39 this year, Your Honor.

18   Q    How far did you get in school?

19   A    11th grade, Your Honor.

20   Q    Where?

21   A    In Jamaica.

22   Q    Okay.  How long have you been in this country?

23   A    Since 1996, Your Honor.

24   Q    And what have you been doing for a living?

25   A    Well, I work on and off.

1    Q    Doing what kind of work?

2    A    Oh, I work at a discount store.  Sometimes I do --

3    excuse me, Your Honor.  Sometimes I do a little

4    painting.

5    Q    Have you had any trouble understanding this case or

6    what's going on in this case?

7    A    No, Your Honor.

8    Q    Okay.  Have you had occasion to consult a mental

9    health, professional, like a psychiatrist, a

10    psychologist, a psychiatric social worker, or anyone

11    like that?

12    A    No, Your Honor.

13    Q    Are you taking any prescription drugs?

14    A    No, Your Honor.

15    Q    Have you ever had any problem with substance abuse,

16    either drugs or alcohol?

17    A    No, Your Honor.

18    Q    Now you understand that you don't have to plead

19    guilty at all, that under our system of justice, an

20    individual is presumed innocent unless and until the

21    Government can satisfy each essential element of the

22    offense charged against him beyond a reasonable doubt.

23    And as a charged defendant, you don't have to do

24    anything at all?  You can --

25    A    Yes, Your Honor.

6

1   Q    You can look the Government straight in the eye and

2   say "prove it."  And unless and until they do, doing

3   whatever they want to do, you can't be found guilty

4   unless, of course, you plead guilty?

5   A    Yes, Your Honor.

6   Q    And, of course, you've got a right to challenge the

7   Government's proof.  That is to say, Ms. Kelley could

8   cross-examine the Government's witnesses.  She could

9   bring in witnesses on your behalf.  If they wouldn't

10  come in here voluntarily, I'd give her court process to

11  force them to come in here.  You'd have the right to

12  take the witness stand yourself and tell your side of

13  the story or you could choose not to.  And if you chose

14  not to, I would tell the jury that they couldn't hold

15  that against you because that's another valuable

16  constitutional right that you have, the right against

17  self-incrimination.  And the jury can't burden that

18  right, directly or indirectly, by attempting to draw

19  some sort of conclusion from the fact that you asserted

20  your privilege.  In short, you're giving up the right to

21  have very valuable constitutional rights protect you

22  throughout this criminal prosecution before anyone can

23  reach a judgment of guilty unless you plead guilty.  Do

24  you understand that?

25  A    Yes, Your Honor.

7

1   Q     And we talked about the maximum penalty here.  But

2   you should understand that at the present state, the

3   Federal Judges are authorized to impose up to the

4   maximum penalty.  They also are going to be guided,

5   to some degree, by something called the Sentencing

6   Guidelines.  Those are a series of directives that kind

7   of outline what the relevant consideration should be

8   in fashioning a sentence.  And while they are not

9   mandatory, they are advisory and they are thought to be

10  of considerable assistance in helping Judges to decide

11  where to put the proper penalty in the case.  Now, have

12  you had a chance to talk to Ms. Kelley about the

13  Sentencing Guidelines and how they might apply in this

14  case?

15  A     Yes, Your Honor.

16  Q     You understand that by pleading guilty, you're

17  giving up the right to challenge this case in its

18  entirety?  If I accept your plea of guilty, you don't

19  get to withdraw it; do you understand that?

20  A     Yes, Your Honor.

21  Q     And you don't get to withdraw it if you don't like

22  the sentence I impose in this case; --

23  A     Yes, sir.

24  Q     -- you understand that?

25  A     Yes, Your Honor.

8

```
1    Q    Now, this plea of guilty may have other effects on

2    your life.  In ffact, it's illustrated to some degree by

3    the charge that's laid against you.  This is a charge of

4    illegal reentry into the United States.

5    A    Yes, Your Honor.

6    Q    When you've been forced out of the United States or

7    you're subject to a felony, it may mean that you don't

8    get a chance to come back into the United States again.

9    You may not be able to hold a public office, either here

10   or in other countries.  You may not be able to serve on

11   a jury.  You may not be able to hold a firearm.  A whole

12   series of other aspects of your life may be affected by

13   your decision to plead guilty; do you understand that?

14   A    Yes, Your Honor.

15   Q    Okay.  Now, one of the things that I have to do is

16   satisfy myself that there is substantial evidence from

17   which a finder of fact could find you guilty of the

18   offense that's charged.  And the offense that's charged

19   is that on or about March 11th, 2004, you, having been

20   an alien and having previously been excluded from this

21   country, reentered without having received the express

22   approval or authority or consent of the Attorney General

23   or the Secretary of Homeland Security and that you've

24   not reapplied for admission to the United States.  Now,

25   what the Government has to do is show that you did this
```

9

1    knowingly and intentionally -- that is, that you didn't

2    just stray across the border, you knew what you were

3    doing, you came into this country after being excluded

4    or deported.  Do you understand the Government has to

5    prove those kinds of things?

6    A    Yes, Your Honor.

7    Q    Okay.  Have you had a chance to talk to Ms. Kelley

8    about what the various elements are of the offense?

9    A    Yes, Your Honor.

10    Q    Do you have any questions of me regarding that?

11    A    No, Your Honor.

12    Q    Okay.  So I'm going to ask Mr. Connolly to tell us

13    what the evidence would be if this case went to trial.

14    I want you to listen very carefully.  Because when he's

15    through, I'm going to turn to you and say "is that what

16    happened?"  All right?

17    A    Yes, Your Honor.

18          MR. CONNOLLY:  Your Honor, if the case were to

19    proceed to trial, the Government would expect to

20    establish the following:  The defendant is a native and

21    citizen of Jamaica.  On April 11th of 1991, this

22    defendant, using his brother's name of Paul Joseph

23    Francis, pled guilty to a criminal offense in Circuit

24    Court in Baltimore, Maryland.  As a result of that

25    conviction, this defendant was ordered deported by an

1    Immigration Judge under his brother's name.  And on

2    November 14th of 1991, this defendant was deported to

3    Jamaica.  A warrant of deportation was executed to

4    memorialize the deportation and the deported alien's

5    right thumbprint is placed on the warrant.  The mistake

6    with the name came to the attention of INS when the real

7    Paul Joseph Francis, who was and is a lawful permanent

8    resident, applied for a replacement alien registration

9    card.  Paul Francis submitted fingerprints to INS and it

10   was confirmed that he was not the individual deported

11   on November 14th of 1991.  As a result, an Immigration

12   Judge reopened the deportation proceedings and amended

13   the deportation order to be against this defendant, Joel

14   Garfield Francis.  In 2004, this defendant's presence in

15   Massachusetts came to the attention of ICE agents when

16   he was arrested in Boston and charged in Suffolk

17   Superior Court with a criminal offense.  On March 11th

18   of 2004, ICE agents went to Suffolk Superior Court and

19   took this defendant into custody.  He took a 10-print

20   fingerprint card.  An FBI fingerprint specialist

21   compared the right thumbprint from the 10-print card to

22   the right thumbprint on the original warrant of

23   deportation and determined the prints came from the same

24   individual.  A review of Department of Homeland Security

25   records confirmed that the defendant never applied for

1   or received the consent of the United States Attorney

2   General prior to March 1st, 2003, with the express

3   consent of the Secretary of the Department of Homeland

4   Security since that date to enter or to reapply for

5   admission to the United States.

6           BY THE COURT:

7   Q     You have heard what Mr. Connolly says the evidence

8   would be.

9   A     Yes, Your Honor.

10  Q     Do you dispute any of that evidence?

11          MS. KELLEY:  If I may, Your Honor, on Mr.

12  Francis' behalf, we are not disputing in any way that he

13  was the individual deported in 1991 and that he was

14  found in the United States in March and that he did not

15  have any permission to be here.  With regard to the

16  details of his having been deported under his brother's

17  name, he does have a different memory of what he told

18  ICE concerning his true identity before he left the

19  country, but I don't believe that's necessary.

20          THE COURT:  What's the different understanding?

21          MS. KELLEY:  Well, he has a distinct memory of

22  telling a customs agent his true name before he left the

23  country.  He was concerned that this would interfere

24  with his brother's immigration status in the United

25  States.  But we don't have any proof of that.  But as


1    far as pleading guilty to this offense, yes, he does

2    wish to plead guilty to this offense.  I don't know that

3    that's necessary to the guilty plea at any rate, but

4    that is something -- a fact which he disputes.

5            THE COURT:  All right.

6        BY THE COURT:

7    Q    Well, let me just ask a couple of questions, Mr.

8    Francis.  You knew that you were being deported from the

9    United States?

10   A    Yes, Your Honor.

11   Q    You knew that the Government had decided because of

12   your prior criminal record --

13   A    Yes, Your Honor.

14   Q    -- that you ought to be sent out of the United

15   States and not permitted back in unless you reapplied

16   for admission and had been admitted, either by the

17   Attorney General or thereafter by the Secretary of

18   Homeland Security?

19   A    Yes, Your Honor.

20   Q    Okay.  So, whatever dispute there is about what

21   name you were deported under or whether or not you gave

22   a false name or anything like that, you knew they wanted

23   you to get out of the United States and not come back in

24   here unless you've been approved, right?

25   A    Yes, Your Honor.

13

1      Q      Okay.

2                    THE COURT:  Mr. Connolly, do you know of any

3      reason I shouldn't accept the plea?

4                    MR. CONNOLLY:  No, Your Honor.

5                    THE COURT:  Ms. Kelley, do you know of any

6      reason I shouldn't accept the plea?

7                    MS. KELLEY:  No, sir.

8                    THE COURT:  All right.  I'll ask Ms. Rynne to

9      inquire of Mr. Francis.

10                    THE CLERK:  Please stand.  Joel Garfield

11     Francis, on Criminal Number 04-10088-DPW, you are

12     charged in Count 1 of a one-count indictment with

13     illegal reentry of deported alien in violation of Title

14     VIII, United States Code, Section 1326.  You have

15     previously pled not guilty.  Do you now wish to change

16     your plea?

17                    MR. FRANCIS:  Yes.

18                    THE CLERK:  What say you now as to Count 1,

19     guilty or not guilty?

20                    MR. FRANCIS:  Guilty.

21                    THE CLERK:  Please be seated.

22                    THE COURT:  Based on the discussion we've had

23     this morning, Mr. Francis, I'm satisfied that your

24     decision to plead guilty is a knowing and a voluntary

25     one and it's supported by substantial evidence from

14

1    which a finder of fact could find you guilty of the

2    offense charged.  As a consequence, you're now adjudged

3    guilty of that offense.

4            The next formal event in this courtroom will

5    take place on April 26th at 2:30 P.M.  That's when the

6    sentencing is going to take place.

7            MR. FRANCIS:  Yes.  Yes, Your Honor.

8            THE COURT:  What's going to happen before the

9    sentencing takes place is that the Probation Office of

10   this court will prepare a presentence report.  It's a

11   document I rely on very heavily in making my judgment

12   about what the proper sentence should be.  It's also

13   something that you can contribute to with Ms. Kelley to

14   attempt to bring to my attention things that I should

15   know.  You will get a chance to see the presentence

16   report in its draft form.  If you're not satisfied with

17   the draft, then you can ask the Probation Office to make

18   changes or corrections.  And if you're still not

19   satisfied, you can bring that matter up to me at the

20   time of sentencing.  And at the time of sentencing, both

21   Ms. Kelley and you will have a chance to address me

22   orally directly in court regarding the sentencing

23   decision.

24            Is there anything further that we need to

25   take up?

15

1          MR. CONNOLLY:  No, Your Honor.

2          MS. KELLEY:  No, Your Honor.

3          THE COURT:  Fine.  Thank you very much.

4                  RECESSED AT 11:20 A.M.

5

6                  C E R T I F I C A T E

7

8          I, PAMELA R. OWENS, Official Court Reporter,

9    U. S. District Court, do hereby certify that the

10   foregoing is a true and correct transcription of the

11   proceedings taken down by me in machine shorthand and

12   transcribed by same.

13

14                  _Pamela R. Owens_ 3/21/05

15

16

17

18

19

20

21

22

23

24

25

# Attachment C

Rose Well RD.
Palmers CrossPA.
Clarendon,
Jamaica WI.

Your Honour,

I greet you in the name of the Father the Son and the Holy Spirit. I am Vedalyn Francis the mother of Joel Francis. Joel is the third ochild of eight children. Joel grew up in his parents business and we are still doing business. Joel is the most loving, cfeerful, careful of all his brothers. Heattendedthe Dalton James All age School in Kingston. After he graduated, he got a job in the business , Joel is very hardworking young man. He is very honest and responsible. His father could rely on him to do any business, he respect the people who work him and they respect him also. He care and love everyone so they all look up to him. Your Honour Joel job is here in Jamaica waiting for him. Joel is father and his children are here longing and waiting for him. Your Honour Joel was not a wayward child growing up, we could depend on him in the home. Your Honour Joel is loved in his community by almost everyone, so please Your Honour I am asking you sir please not to send him to prison, if it even for the children sake please send him home. The Lord will bless you sir

Your respectfully
Vedalyn Francis.

Rosewell RD
Palmers cross PA
Clarendon
 Jamaica W.I

To Whom It May Concern,

   I am writing to you this letter on the behalf of Joel Francis my uncle.My uncle is a very compassionate, loving, kind, caring, hardworking and plesant person.I am a blind person who wants to accomplish so much, I became blind in year2002 the same year I was to my subjects. In November of 2002 I did an apperation on my eye and it was my uncle who helps me in paying the cost. My uncle bought me a custom built type and speak computer to further my education and I know he woulddo a lot more for me if you set him free. Your honour please give him the opportunity to help me because there is no uncle in this world like my uncle. Your honour I do not know you, but I know God bless you with a good heart so I am asking you to havemercy and compassion and pitty on him. He is an amazing uncle.Thank you for  taking some time time from your busy schedule to read this letter.

                    Your Truly
                    ALECIA HENRY.

Rose Well RD
Palmers cross PA
Clarendon
Jamaica W.I.

To Whom It May concern,

I am the sister of Joel Francis whose faith has been pending on your adjudication. Joel is one of my younger brother and is also the bread winner of his family. My brother is a respectable and law abading person who have never in troble with the law. Joel is a kind hearted and loving person he is always there whenever I need someone to talk with. He helps me finacally with the bills and my medicationsso I am asking you to exercise your connederation and leanecy on the matter consideration will be highly appreciated by everyone in the family.Thank you.

Your Truly
PAULINE DAVIS.

